UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) CHELBE WILLAMS MORAES,<br>(2) JESSE JAMES MORAES,<br>(3) HUGO GIOVANNI MORAES,<br>(4) MARCOS CHACON GIL,<br>a/k/a "MARQUITO," and<br>(5) EBERSON LUIZ VANZ,<br>a/k/a "GRANDE,"<br><br>Defendants | Criminal No. 1:21-cr-10175-ADB<br><br>Violations:<br><br>Count One: Conspiracy to Encourage and Induce an Alien to Come to, Enter, and Reside in the United States for Commercial Advantage or Private Gain<br>(8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and (B)(i))<br><br>Count Two: Encouraging and Inducing an Alien to Come to, Enter, and Reside in the United States for Commercial Advantage or Private Gain<br>(8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i))<br><br>Counts Three and Four: Forced Labor and Attempted Forced Labor<br>(18 U.S.C. §§ 1589(a), 1594(a))<br><br>Count Five: Forced Labor<br>(18 U.S.C. § 1589(b))<br><br>Count Six: Forced Labor Conspiracy<br>(18 U.S.C. §§ 1589(a), 1594(b))<br><br>Count Seven: Labor Trafficking and Attempted Labor Trafficking<br>(18 U.S.C. §§ 1590(a), 1594(a))<br><br>Count Eight: Money Laundering Conspiracy<br>(18 U.S.C. § 1956(h))<br><br>Count Nine: Money Laundering<br>(18 U.S.C. § 1956(a)(2)(A))<br><br>Count Ten: Transferring False Identification Documents<br>(18 U.S.C. § 1028(a)(2)) |

)   <u>Alien Smuggling Forfeiture Allegation:</u>
)   (8 U.S.C. § 1324(b), 18 U.S.C. § 982(a)(6) &
)   28 U.S.C. § 2461)
)
)   <u>Forced Labor Forfeiture Allegation</u>
)   (18 U.S.C. § 1594(d))
)
)   <u>Money Laundering Forfeiture Allegation:</u>
)   (18 U.S.C. § 982(a)(1))

## SECOND SUPERSEDING INDICTMENT

At all times relevant to this Indictment:

### General Allegations

### Overview of the Migrant Smuggling Conspiracy

1.       Between in or about July 2016 through in or about October 2022, CHELBE WILLAMS MORAES ("CHELBE"), JESSE JAMES MORAES ("JESSE"), HUGO GIOVANNI MORAES ("HUGO"), and EBERSON LUIZ VANZ, a/k/a GRANDE ("VANZ"), conspired together and with others known and unknown to the Grand Jury to encourage and induce undocumented migrants from Brazil (collectively "Migrants," or, in the language of the relevant statutes, "aliens") to come to, enter, and reside in the United States ("migrant smuggling," or, in the language of the relevant statutes, "alien smuggling"). The Migrants were not United States citizens and did not have prior official authorization from the United States government to come to, enter, and reside in the United States. The Migrants and their families paid money, generally between $12,000 and $22,000, to CHELBE and others, to be smuggled into the United States.

2

<u>Manner and Means of the Migrant Smuggling Conspiracy</u>

2.      Among the manner and means by which CHELBE, JESSE, HUGO, VANZ, and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

a.      Recruiting and otherwise negotiating the terms of the smuggling with the Migrants in Brazil;

b.      Arranging and facilitating the travel of the Migrants from Brazil to Cancun and elsewhere in Mexico and then to northern Mexico, including to Ciudad Juarez, before their illegal entry into the United States by, among other things, arranging and paying for the Migrants' ground and air travel and arranging and paying for the Migrants to stay in hotels, motels and the homes of coconspirators, associates, and other Migrants throughout their smuggling trips;

c.      Providing the Migrants with methods of securely communicating with CHELBE during their smuggling trip and instructing them to destroy and replace the subscriber identity module ("SIM card") in their phones before crossing into the United States so that U.S. immigration authorities would not discover evidence of the scheme;

d.      Working with other human smugglers in Mexico who facilitated the smuggling trips by, among other things, arranging and paying for ground transportation and hotel stays, making sure the Migrants were not apprehended by immigration authorities until they were in the United States, driving the Migrants to the United States border and directing them where to cross and surrender to United States authorities at points other than official United States Ports of Entry;

e.      Encouraging the Migrants to make fraudulent claims of asylum and familial relationships (*e.g.*, parent and minor child) in the United States and providing them with false documentation to support their claims;

f.      Providing the Migrants with fraudulent information concerning U.S. points of contact and instructing them to give this information to U.S. immigration authorities when they were apprehended in the United States;

g.      Arranging and paying for the Migrants' travel to their final destination in the United States once they were released from immigration detention;

h.      Coordinating with JESSE, HUGO, VANZ, and other relatives and associates of CHELBE in the Boston area to meet certain of the Migrants when they arrived in Boston and providing them with transportation from the airport and initial housing in the Boston area if needed;

i.      Arranging for some of the Migrants to work in restaurants in Massachusetts owned and operated by JESSE and HUGO;

j.      Encouraging the Migrants working for JESSE and HUGO to obtain false identification documents and referring them to MARCOS CHACON GIL, a/k/a MARQUITO," ("CHACON") to obtain such false identification documents;

k.      Agreeing that some of the Migrants could pay off some of their smuggling fee once they reached the United States; and

l.      Accepting smuggling debt payments via direct payment, the withholding of wages, or collection by relatives and other associates within and outside the United States.

4

Acts in Furtherance of the Migrant Smuggling Conspiracy

3.      In or about 2018, JESSE encouraged a Migrant smuggled into the United States by CHELBE ("Migrant 1") to leave Brazil and come to the United States to work at his restaurant in Woburn, Massachusetts.

4.      In or about 2018, JESSE and HUGO encouraged Migrant 1 to obtain a fake Social Security card and other fake identification documents from CHACON to facilitate Migrant 1's work at restaurants owned by JESSE and HUGO.

5.      In or about March 2019, CHELBE offered to smuggle a Migrant ("Migrant 2") and Migrant 2's family into the United States from Brazil for a fee of $22,000.

6.      On or about April 11, 2019, CHELBE asked his relative to collect a $10,000 down payment from a relative of Migrant 2 in Massachusetts in partial satisfaction of Migrant 2's smuggling debt to CHELBE.

7.      On or about June 26, 2019, CHELBE directed Migrant 2, who was then living in Massachusetts, to file a claim for humanitarian asylum immediately and offered to give Migrant 2 contact information for an immigration attorney through CHELBE's nephew, who also lived in Massachusetts.

8.      On or about September 5, 2019, VANZ collected a $1,000 smuggling debt payment from Migrant 2, and VANZ called CHELBE, with Migrant 2 present, to confirm that VANZ had received the payment in partial satisfaction of Migrant 2's smuggling debt to CHELBE.

9.      On or about October 1, 2019, HUGO gave Migrant 1 advice on finding additional employment and encouraged Migrant 1 to tell his/her children to move out so that Migrant 1 would not have to pay as much in rent and could more easily pay off Migrant 1's smuggling debt.

10.     On or about July 31, 2020, JESSE gave Migrant 2 directions for wiring an $800 smuggling debt payment to CHELBE in Brazil.

### Overview of the Forced Labor Conspiracy

11.     Between in or about July 2016 through in or about October 2022, CHELBE, JESSE, and HUGO conspired together and with others known and unknown to the Grand Jury to obtain the labor and services of Migrants by means of: force, threats of force, physical restraint, threats of physical restraint, serious harm, and threats of serious harm to the Migrants and another person; abuse and threatened abuse of law and legal process; and a scheme, plan and pattern intended to cause the Migrants to believe that, if they did not perform such labor and services, they and another person would suffer serious harm and/or physical restraint.

### Manner and Means of the Forced Labor Conspiracy

12.     Among the manner and means by which CHELBE, JESSE, HUGO, and coconspirators known and unknown to the Grand Jury carried out the forced labor conspiracy were the following:

a.      Targeting and recruiting Migrants to work in restaurants owned and operated by JESSE and HUGO in Woburn, Massachusetts, by promising them good jobs and a better life than they had in Brazil;

b.      Arranging for their Migrant employees to rent or share the rental of one or more apartments owned or controlled by the defendants; and

c.      Forcing their migrant employees to continue working long hours, often performing difficult manual labor, at substandard wages, without overtime, while subjecting the victims to threats of serious harm, including financial harm, violence, and

deportation to prevent them from quitting and demanding better pay and working conditions.

<u>Acts in Furtherance of the Forced Labor Conspiracy</u>

13.     On an unknown date in or about November 2017, CHELBE and JESSE: met with two Migrants (Migrant 4 and Migrant 5) in Brazil and encouraged them to travel to the United States; promised Migrant 4 a job as a cook in his restaurant in Woburn, Massachusetts; and assured Migrants 4 and 5 that they would have a better life in the United States.

14.     On or about February 6, 2018, JESSE wired $500 to a relative of Migrants 4 and 5 to be used by Migrants 4 and 5 for expenses while they were in Mexico en route to the United States.

15.     On an unknown date in or about February 2018, a coconspirator ("CC-1") had a phone conversation with Migrant 4 and told Migrant 4 that he/she would be going to Massachusetts instead of Pennsylvania and could stay at a particular address in Woburn, Massachusetts, which was owned by a relative of HUGO's ("the Woburn House").

16.     On an unknown date in or about February 2018, JESSE and HUGO arranged for Migrants 4 and 5 to rent two bedrooms in the Woburn House.

17.     On an unknown date in or about February 2018, JESSE and HUGO gave Migrant 4 a job at their restaurant in Woburn, Massachusetts, which included carrying heavy objects, and told Migrant 4 he/she would be paid $3 per hour and his/her wages would all be applied to the rent on the Woburn House.

18.     On an unknown date in or about March 2018, JESSE and HUGO summoned Migrants 4 and 5 to a meeting in the office at their restaurant in Woburn, Massachusetts, and told

them that if Migrant 4 did not continue to work at the restaurant, Migrants 4 and 5 would have to move out of the Woburn House and that JESSE and HUGO would call the police and Immigration and have them deported.

19.     In or about 2018, JESSE encouraged Migrant 1 to leave Brazil and come to the United States to work at his restaurant in Woburn, Massachusetts.

20.     On an unknown date in or about early 2021, JESSE had a phone conversation with a Migrant ("Migrant 6") and encouraged him/her to come to the United States and work in his restaurant in Woburn, Massachusetts but warned him/her not to talk about it, because, as he said in words or substance, "if the police knew, it could hurt all of us."

21.     On an unknown date in or about May 2021, JESSE and HUGO gave Migrant 6 a job at their restaurant in Woburn, Massachusetts.

22.     On an unknown date in or about October 2021, JESSE summoned Migrant 6 to a meeting and warned Migrant 6 that if he/she stopped working at his restaurant he/she would suffer serious harm.

<u>Overview of the Money Laundering Conspiracy</u>

23.     From in or about March 2017 through in or about October 2022, CHELBE, JESSE, and coconspirators known and unknown to the Grand Jury conspired to transfer funds into and out of the United States with the intent to promote the migrant smuggling conspiracy, and to conduct financial transactions using the proceeds of the migrant smuggling conspiracy that were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of such proceeds.

<u>Manner and Means of the Money Laundering Conspiracy</u>

24.     Among the manner and means by which CHELBE, JESSE, and coconspirators known and unknown to the Grand Jury carried out the conspiracy were the following:

        a.     Arranging for coconspirators, associates, and Migrants in the United States to wire funds to Migrants and coconspirators in Mexico and elsewhere to pay for expenses during the smuggling trips and to compensate coconspirators assisting with the smuggling trips;

        b.     Directing Migrants smuggled into the United States by CHELBE to make payments toward their smuggling debts by wiring funds from the United States to CHELBE's bank account in Brazil; and

        c.     Directing Migrants smuggled into the United States by CHELBE to make payments toward their smuggling debts by depositing funds into the bank account of a coconspirator who was employed by JESSE in Massachusetts.

<u>Acts in Furtherance of the Money Laundering Conspiracy</u>

25.     On or about February 6, 2018, JESSE made an electronic wire transfer of $500 to a relative of Migrant 4 and Migrant 5, who were in Cancun, Mexico and needed the money to pay for room and board while Migrant 4 and Migrant 5 were being smuggled by CHELBE into the United States.

26.     On or about August 23, 2019, a coconspirator ("CC-2") sent Migrant 2 the information for VANZ's bank account so that Migrant 2 could deposit into that bank account a $1,000 payment in partial satisfaction of his/her smuggling debt.

27.     On or about January 26, 2020, CHELBE directed a Migrant to make an electronic wire transfer of $733 to CHELBE's bank account in Brazil in partial satisfaction of his/her smuggling debt.

28.     On or about February 24, 2020, CHELBE directed Migrant 2 to make an electronic wire transfer of $300 to a migrant located in Cancun, Mexico ("Migrant 3"), who needed the money for room and board while Migrant 3 was being smuggled by CHELBE into the United States from Brazil.

## COUNT ONE

Conspiracy to Encourage and Induce an Alien to Come to, Enter, and Reside in the United States
for Commercial Advantage and Private Gain
(8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and (B)(i))

The Grand Jury charges:

29.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28
of this Second Superseding Indictment.

30.     Between in or about July 2016 through in or about October 2022, in the District of
Massachusetts and elsewhere, the defendants,

(1) CHELBE WILLAMS MORAES,
(2) JESSE JAMES MORAES,
(3) HUGO GIOVANNI MORAES, and
(5) EBERSON LUIZ VANZ, a/k/a "GRANDE,"

conspired together and with others known and unknown to the Grand Jury, for the purpose of
commercial advantage and private financial gain, to encourage and induce an alien to come to,
enter and reside in the United States, knowing and in reckless disregard of the fact that such coming
to, entry and residence was and would be in violation of law, in violation of Title 8, United States
Code, Sections 1324(a)(1)(A)(iv) and (B)(i).

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(i).

<u>COUNT TWO</u>

Encouraging and Inducing an Alien to Come to, Enter, and Reside in the United States
(8 U.S.C. §§ 1324(a)(1)(A)(iv) and (B)(i))

The Grand Jury further charges:

31.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

32.     From in or about the Summer of 2018 through in or about November 2020, in the District of Massachusetts and elsewhere, the defendants,

(1) CHELBE WILLAMS MORAES,
(2) JESSE JAMES MORAES,
(3) HUGO GIOVANNI MORAES, and
(5) EBERSON LUIZ VANZ, a/k/a "GRANDE,"

for the purpose of commercial advantage and private financial gain, encouraged and induced an alien, namely Migrant 1, to come to, enter and reside in the United States, knowing and in reckless disregard of the fact that such coming to, entry and residence was and would be in violation of law.

All in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(iv) and (B)(i).

<u>COUNT THREE</u>

Forced Labor and Attempted Forced Labor
(18 U.S.C. §§ 1589(a), 1594(a))

The Grand Jury further charges:

33.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

34.     In or about 2018, in the District of Massachusetts, and elsewhere, the defendants,

(2) JESSE JAMES MORAES, and
(3) HUGO GIOVANNI MORAES,

did knowingly provide and obtain, and attempt to provide and obtain, the labor and services of Migrant 4 by means, and the combination of means, of force; threats of force; physical restraint; threats of physical restraint to Migrant 4 and other persons; serious harm and threats of serious harm to Migrant 4 and other persons; the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause Migrant 4 to believe that, if Migrant 4 did not perform and continue to perform such labor and services, Migrant 4 and other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(a) and 1594(a).

## COUNT FOUR

Forced Labor and Attempted Forced Labor
(18 U.S.C. §§ 1589(a), 1594(a))

The Grand Jury further charges:

35.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

36.     In or about 2018, in the District of Massachusetts, and elsewhere, the defendants,

(2) JESSE JAMES MORAES, and
(3) HUGO GIOVANNI MORAES,

did knowingly provide and obtain, and attempt to provide and obtain, the labor and services of Migrant 5 by means, and the combination of means, of force; threats of force; physical restraint; threats of physical restraint to Migrant 5 and other persons; serious harm and threats of serious harm to Migrant 5 and other persons; the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause Migrant 5 to believe that, if Migrant 5 did not perform and continue to perform such labor and services, Migrant 5 and other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(a) and 1594(a).

## COUNT FIVE

Forced Labor
(18 U.S.C. § 1589(b))

The Grand Jury further charges:

37.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

38.     In or about 2018, in the District of Massachusetts, and elsewhere, the defendants,

(2) JESSE JAMES MORAES, and
(3) HUGO GIOVANNI MORAES,

did knowingly benefit, financially and by receiving things of value, from participation in a venture which has engaged in the providing and obtaining of labor and services by means, and the combination of means, of force; threats of force; physical restraint; threats of physical restraint to Migrant 4 and other persons; serious harm and threats of serious harm to Migrant 4 and other persons; the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause Migrant 4 to believe that, if Migrant 4 did not perform and continue to perform such labor and services, Migrant 4 and other persons would suffer serious harm and physical restraint, knowing and in reckless disregard of the fact that the venture has engaged in the providing and obtaining of labor and services by any of such means.

All in violation of Title 18, United States Code, Section 1589(b).

## COUNT SIX

Forced Labor Conspiracy
(18 U.S.C. §§ 1589(a), 1594(b))

The Grand Jury further charges:

39.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

40.     Between in or about July 2016 through in or about October 2022, in the District of Massachusetts and elsewhere, the defendants,

(1) CHELBE WILLAMS MORAES,
(2) JESSE JAMES MORAES, and
(3) HUGO GIOVANNI MORAES,

conspired together and with others known and unknown to the Grand Jury to knowingly provide and obtain the labor and services of Migrants by means, and the combination of means, of force; threats of force; physical restraint; threats of physical restraint such Migrants and other persons; serious harm and threats of serious harm to such Migrants and other persons; the abuse and threatened abuse of law and legal process; and by means of a scheme, plan, and pattern intended to cause such Migrants to believe that, if such Migrants did not perform and continue to perform such labor and services, such Migrants and other persons would suffer serious harm and physical restraint.

All in violation of Title 18, United States Code, Sections 1589(a) and 1594(b).

## COUNT SEVEN

Labor Trafficking and Attempted Labor Trafficking
(18 U.S.C. §§ 1590(a), 1594(a))

The Grand Jury further charges:

41.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

42.     In or about 2018, in the District of Massachusetts, and elsewhere, the defendant,

(2) JESSE JAMES MORAES,

did knowingly recruit, harbor, transport, provide, and obtain by any means, and did attempt to knowingly recruit, harbor, transport, provide and obtain by any means, Migrant 4 for labor and services in violation of Title 18, United States Code, Chapter 77, that is, forced labor in violation of Title 18, United States Code, Sections 1589(a) and (b).

All in violation of Title 18, United States Code, Sections 1590(a) and 1594(a).

17

<u>COUNT EIGHT</u>

Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The Grand Jury further charges:

43.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

44.     From in or about March 2017 through in or about October 2022, in the District of Massachusetts and elsewhere, the defendants,

(1) CHELBE WILLAMS MORAES, and
(2) JESSE JAMES MORAES,

conspired together and with others known and unknown to the Grand Jury to:

a) transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument and funds from a place in the United States to and through a place outside the United States and to a place in the United States from and through a place outside the United States, with the intent to promote the carrying on of specified unlawful activity, that is, alien smuggling conspiracy, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(i) as charged in Count One, in violation of Title 18, United States Code, Section 1956(a)(2)(A); and

b) conduct and attempt to conduct financial transactions, to wit, bank deposits, wire transfers and other electronic transfers of funds among financial institutions, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, alien smuggling conspiracy, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(i) as charged in Count One, and knowing that the transactions

18

were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

,

<u>COUNT NINE</u>
Money Laundering
(18 U.S.C. § 1956(a)(2)(A))

The Grand Jury further charges:

45.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

46.     On or about February 24, 2020, in the District of Massachusetts and elsewhere, the defendant,

(1) CHELBE WILLAMS MORAES,

knowingly transported, transmitted and transferred, and attempted to transport, transmit and transfer, monetary instruments and funds from a place in the United States, that is, Massachusetts, to and through a place outside the United States, that is, Cancun, Mexico, with the intent to promote the carrying on of specified unlawful activity, that is, alien smuggling conspiracy, in violation of Title 8, United States Code, Sections 1324(a)(1)(A)(v)(I) and (B)(i) as charged in Count One.

All in violation of Title 18, United States Code, Section 1956(a)(2)(A).

<u>COUNT TEN</u>
Transferring False Identification Documents
(18 U.S.C. § 1028(a))

The Grand Jury further charges:

47.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 28 of this Second Superseding Indictment.

48.     On or about February 20, 2020, in the District of Massachusetts, the defendant,

(4) MARCOS CHACON GIL a/k/a "MARQUITO,"

knowingly transferred a false identification document, namely a false United States Social Security card and a false United States Permanent Resident card, otherwise known as a "Green Card," knowing that such document was produced without lawful authority.

All in violation of Title 18, United States Code, Section 1028(a)(2).

<u>ALIEN SMUGGLING FORFEITURE ALLEGATION</u>

(8 U.S.C. § 1324(b), 18 U.S.C. § 982(a)(6) & 28 U.S.C. § 2461)

The Grand Jury further finds:

49.     Upon conviction of one or more of the alien smuggling offenses in violation of

Title 8, United States Code, Section 1324, set forth in Counts One and Two, the defendants,

(1) CHELBE WILLAMS MORAES,
(2) JESSE JAMES MORAES,
(3) HUGO GIOVANNI MORAES, and
(5) EBERSON LUIZ VANZ,

shall forfeit to the United States, pursuant to Title 8, United States Code, Section 1324(b), Title

18, United States Code, Section 982(a)(6), and Title 28, United States Code, Section 2461(c), any

conveyance, including any vessel, vehicle, or aircraft, used in the commission of the offenses; any

property, real or personal, that constitutes or is derived from or is traceable to the proceeds obtained

directly or indirectly from the commission of the offenses; and any property, real or personal, used

and intended to be used to facilitate the commission of the offenses, including but not limited to

the following:

a.      TASTE OF BRAZIL – TUDO NA BRASA, LLC;

b.      THE DOG HOUSE BAR & GRILL, LLC;

c.      The real property located at 414 Main Street, Woburn, MA 01801;

d.      The real property located at 434 Main Street, Woburn, MA 01801;

e.      $60,326 in United States currency, seized on October 4, 2022, at THE DOG

        HOUSE BAR & GRILL, 434 Main Street, Woburn, MA; and

f.      $211,912 in United States currency, seized on October 4, 2022, at TASTE OF

        BRAZIL restaurant, 414 Main Street, Woburn, MA.

22

50.     If any of the property described in Paragraph 49, above, as being forfeitable pursuant to Title 8, United States Code, Section 1324(b), Title 18, United States Code, Section 982(a)(6), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants –

    a.     cannot be located upon the exercise of due diligence;

    b.     has been transferred or sold to, or deposited with, a third party;

    c.     has been placed beyond the jurisdiction of the Court;

    d.     has been substantially diminished in value; or

    e.     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in Paragraph 49 above.

    All pursuant to Title 8, United States Code, Section 1324(b), Title 18, United States Code, Section 982(a)(6), and Title 28, United States Code, Section 2461(c).

## FORCED LABOR FORFEITURE ALLEGATION
(18 U.S.C. § 1594(d))

The Grand Jury further finds:

51.     Upon conviction of one or more of the offenses in violation of Title 18, United States Code, Sections 1589(a), 1589(b), 1590, 1594(a) and 1594(b), set forth in Counts Three through Seven, the defendants,

> (1) CHELBE WILLAMS MORAES,
> (2) JESSE JAMES MORAES, and
> (3) HUGO GIOVANNI MORAES,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 1594(d), any property, real or personal, that was involved in, used, or intended to be used to commit or to facilitate the commission of such offense, and any property traceable to such property; and any property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of such offense, and any property traceable to such property, including but not limited to the following:

a.      TASTE OF BRAZIL – TUDO NA BRASA, LLC;

b.      THE DOG HOUSE BAR & GRILL, LLC;

c.      The real property located at 414 Main Street, Woburn, MA 01801;

d.      The real property located at 434 Main Street, Woburn, MA 01801;

e.      $60,326 in United States currency, seized on October 4, 2022, at THE DOG HOUSE BAR & GRILL, 434 Main Street, Woburn, MA; and

f.      $211,912 in United States currency, seized on October 4, 2022, at TASTE OF BRAZIL restaurant, 414 Main Street, Woburn, MA.

24

52.     If any of the property described in paragraph 51, above, as being forfeitable pursuant to Title 18, United States Code, Section 1594(d), as a result of any act or omission of the defendants –

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the Court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 51 above.

All pursuant to Title 18, United States Code, Section 1594(d).

MONEY LAUNDERING FORFEITURE ALLEGATION

(18 U.S.C. § 982(a)(1))

53.     Upon conviction of one or more of the offenses in violation of Title 18, United

States Code, Section 1956, set forth in Counts Eight and Nine, the defendants,

(1) CHELBE WILLAMS MORAES and
(2) JESSE JAMES MORAES,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any

property, real or personal, involved in such offenses, and any property traceable to such property.

54.     If any of the property described in Paragraph 53, above, as being forfeitable

pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of

the defendants –

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the Court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without
    difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b),

incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other

property of the defendants up to the value of the property described in Paragraph 53 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

_____
FOREPERSON

_____
JAMES D. HERBERT
SAMUEL FELDMAN
KELLY LAWRENCE
ASSISTANT UNITED STATES ATTORNEYS
DISTRICT OF MASSACHUSETTS

District of Massachusetts: April 4, 2023
Returned into the District Court by the Grand Jurors and filed.

/s/ Noreen A. Russo
_____
DEPUTY CLERK

at 3:38 PM

27